**THOMAS v. COMMONWEALTH TRUST CO. OF PITTSBURGH.**

No. 7056.

District Court, W. D. Pennsylvania.

Jan. 17, 1933.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., for plaintiff.

Thorp, Bostwick, Stewart & Reed and Earl F. Reed, all of Pittsburgh, Pa., for defendant.

GIBSON, District Judge.

Trial to a jury has been waived in the instant matter, and the facts stipulated.

The Comptroller of the Currency duly assessed against the shareholders of the Bank of Pittsburgh, National Association, the sum of $3,000,000, or $50 per share upon the outstanding shares of the capital stock of that bank, payable on or before November 24, 1931. Some 187 shares of such stock were held by the estate of Eleanor H. Davidson. Eleanor H. Davidson had been declared a lunatic on March 29, 1921, and to have been such from July, 1917, by the court of common pleas of Allegheny county. Prior to that order she had been, on September 10, 1917, decreed to be weak-minded. Of the 187 shares of stock of the Bank of Pittsburgh held by her estate, 150 had been distributed to her by a decree of the orphans' court of Allegheny county, dated February 25, 1920; such shares having theretofore belonged to the husband of the lunatic, who had died on October 5, 1916. The additional 37 shares had been received pursuant to a 25 per cent. stock dividend declared by the Bank of Pittsburgh, N. A., on July 18, 1922.

The Commonwealth Trust Company of Pittsburgh is, and has been, the committee of

said Eleanor H. Davidson, and has had charge of her person and estate. It has admitted possession of the stock as such committee, and that it has received and retained dividends upon it, but denies that Eleanor H. Davidson has at any time been capable of consenting to the retention of the shares of stock in question, and asserts that it, as her committee, had no power to renounce them or otherwise dispose of them. It has refused to pay the amount of the assessment.

■ Defendant also denies the jurisdiction of this court to entertain the present action.

The jurisdiction of the court seems almost beyond question. This is a case "for winding up the affairs" of a national banking association, and of such cases the District Court, and only the District Court, has jurisdiction. It is true that a judgment against defendant, prior to distribution of the lunatic's estate, could not be enforced without application to the court of common pleas, which has the estate in its custody; but the matter before the court is not the collection of the amount of a judgment, but whether or not plaintiff is entitled to establish his claim by judgment. A number of decisions may be found in the reports wherein it is held that the receiver of a national bank is entitled to recover judgments against estates being administered in state courts. Inter alia, Alexander v. Fidelity Trust Co. (C. C. A.) 249 F. 1.

The second contention of the defendant is to the effect that the liability of a stockholder of a national bank to assessment arises out of contract, and that Mrs. Davidson, having received her stock by operation of law after she had been declared a lunatic and so rendered unable to enter into a contract, is not liable to assessment as a stockholder.

Section 64, title 12, USCA, is in part as follows: "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. * * *"

Section 66 of the same title provides: "Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living *and competent to act and hold the stock in his own name.*"

■ Section 64, supra, plainly excepts no stockholder from its provisions. Section 66 is equally broad in scope. Counsel for defendant have argued that the failure of the statute to mention the committee of a lunatic indicates an intention of Congress to exclude liability on the part of a lunatic stockholder. We are unable to agree with this contention. The terms of the section seem to be plainly designed to cover all persons holding stock in a fiduciary capacity.

The question under immediate consideration is essentially the same as was before the Supreme Court in Christopher v. Norvell, 201 U. S. 216, 26 S. Ct. 502, 50 L. Ed. 732, 5 Ann. Cas. 740. In that case the stockholder was a married woman, who, under the statutes of the state of her residence, was incapable of entering into a contract. As in the present case, it was there asserted by the defendant below that the relation of the shareholder to a national bank is wholly contractual in character, and that the inability of defendant to contract freed her from liability for her share of the assessment. The court held that the liability did not arise wholly out of contract, but was collateral and statutory, and that the defendant was subject to assessment. See, also, Keyser v. Hitz, 133 U. S. 138, 10 S. Ct. 290, 33 L. Ed. 531; McClaine v. Rankin, 197 U. S. 154, 25 S. Ct. 410, 49 L. Ed. 702, 3 Ann. Cas. 500; Thomas v. Matthiessen, 232 U. S. 221, 235, 34 S. Ct. 312, 58 L. Ed. 577.

The purpose of the statute (section 64, supra) is manifest. Congress desired to protect creditors of national banks, and to strengthen such banks with the public by imposing upon them this liability of the shareholders as a safeguard. If certain stockholders are to be free from liability for reasons such as advanced in the instant case, the purpose of Congress would be seriously affected.

True, not every person listed as a stockholder of a national bank is liable to assessment. The stock may have been assigned without acceptance on the part of the listed stockholder, and in a manner tinged with fraud, as, for example, where stock has been assigned for the express purpose of avoiding impending assessment. In such case the person listed as a stockholder may not be liable, but the fraudulent transferor is bound. The fact that a stockholder may be insolvent does not change the principle of liability on the part of each of the stockholders. The underlying reason for the statute still remains.

■ In the instant case the estate of Mrs. Davidson had received dividends from her

stock for years. During that period her committee might have petitioned the court of common pleas for leave to sell the bank stock. Exercising what undoubtedly would have been universally regarded as good judgment, it did not do so, but continued to receive dividends from it. Under such circumstances no equitable reason exists for attempting to distinguish this particular trust estate from other trust estates held liable to pay the Comptroller's assessment.

Judgment will be entered for the plaintiff.